**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 1:23-cr-137-6 (CRC) |
| : | |
| DECARLOS HILL, : | |
| : | |
| **Defendant.** : | |

## UNITED STATES' MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Memorandum in Aid of Sentencing as to Defendant DeCarlos Hill (hereafter, the "Defendant").[1]  For the reasons set forth below, the United States respectfully requests that the Court impose a sentence of 63 months' incarceration, to be followed by 24 months of supervised release.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

On June 10, 2022, the Defendant committed an armed robbery as part of a broader conspiracy to rob South Asian jewelry stores, across multiple states, of heavy gold jewelry. Among the largest robberies committed during the spree, the June 10, 2022 robbery of Virani Jewelers (hereafter, "Virani") in Iselin, New Jersey was spearheaded by leaders of the conspiracy; involved at least two getaway vehicles and nine suspects, including the Defendant; and resulted in an estimated loss of $1.2 million in gold jewelry.  With each co-conspirator playing a different role in committing the robbery of Virani, their combined actions wreaked havoc upon the store and its employees.

For his part, the Defendant served as a getaway driver.  After first driving co-conspirators from Washington, D.C. ("D.C.") to Philadelphia, Pennsylvania, where they planned the robbery,

---

[1] Sentencing is scheduled for November 6, 2024.

the Defendant then drove three of the co-conspirators to their chosen target, Virani, in coordination with another suspect vehicle occupied by other co-conspirators. Upon arriving in the vicinity of Virani, the Defendant cased the jewelry store, circling the block three times so his passengers could best assess how and when to commence the robbery. Eventually, the Defendant stopped his car by Virani and the other getaway vehicle. His co-conspirators ran together from both his vehicle and the other getaway vehicle into Virani, where they staged an armed takeover.

As the Defendant waited in his car, his accomplices wreaked havoc. They collectively stormed the store in a show of force, wearing masks and gloves to conceal their identities.[2] Upon entering together, with co-defendant Wright leading the charge, the co-conspirators shoved employees to the ground and pointed firearms at their heads as others broke the glass display cases with a hammer, resulting in significant damage throughout the store.



Interior camera shows one of the gunmen pointing his firearm at the back of an employee's head while pushing her to the back of the store where the vaults are located. Two of the employees

---

[2] Exterior video shows five suspects exiting from the other getaway vehicle and three exiting from the Defendant's Dodge Charger.

in the store sustained minor injuries—one victim was bleeding and had a small laceration to her right forearm and small cuts to her right knee, toe, and left thigh from being shoved to the ground; the other victim was bleeding from her right leg with a small laceration to her right knee.

As this unfolded, the Defendant remained inside his car, ready and waiting to ensure his co-conspirators could successfully flee, and they did just that. After ransacking the store, the co-conspirators ran to the safety of the two getaway vehicles, including the Defendant's, which enabled them to successfully flee with their haul of stolen gold back to D.C.



On June 14, 2022, only a few days after the robbery, the Defendant met some of his co-conspirators, including Franklin Hunter, in Miami, Florida, where some of the stolen gold was converted into cash. During this trip, Franklin Hunter posted on his Instagram account a video depicting the Defendant with Franklin Hunter and others on an extravagant shopping spree at what appears to be a luxury retail store.

 

On or about April 25, 2023, a federal grand jury indicted two of the co-conspirators, Trevor Wright and William Hunter, on one count of Conspiracy to Interfere with Interstate Commerce by Robbery, in violation of 18 U.S.C. § 1951, in relation to an armed robbery of a different store, Paradise Jewelry Store [ECF No. 1]. On August 17, 2023, a federal grand jury returned a 19-count Superseding Indictment, charging the Defendant and his co-conspirators in connection with nine armed robberies in New Jersey, Pennsylvania, Florida, and Virginia, with substantial planning and coordination occurring in D.C. [ECF No. 10]. The Defendant specifically was only charged in connection with the Virani robbery in New Jersey. He was arrested on August 30, 2023. On March 12, 2024, a Second Superseding Indictment was filed, adding charges against some of the co-conspirators for two additional robberies as well as charges related to the recovery of firearms and narcotics from multiple residences [ECF No. 134].

On July 17, 2024, pursuant to a plea agreement [ECF No. 188], the Defendant plead guilty

4

to Count One of the Second Superseding Indictment, charging Conspiracy to Interfere with Interstate Commerce by Robbery, in violation of 18 U.S.C. § 1951. In so doing, the Defendant accepted responsibility for his involvement in the Virani armed robbery. As part of the plea agreement, the Government agreed to seek dismissal of the remaining charges against the Defendant, including Count Five, Brandishing a Firearm in Furtherance of a Crime of Violence and Aiding and Abetting, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and 2, which carries an 84-month mandatory minimum sentence.

## II.     LEGAL STANDARD

Pursuant to 18 U.S.C. § 3553(a), the Court shall impose a sentence that is sufficient, but not greater than necessary, to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" "to protect the public from further crimes of the defendant;" and to "provide the defendant with needed educational or vocational training." 18 U.S.C. § 3553(a)(2). In addition, the Court must also consider "the nature and circumstances of the offense and the history and characteristics of the defendant;" the types of sentences available, the Sentencing Guidelines; any pertinent policy statements; the need to avoid unwarranted sentence disparities; and the need to provide restitution to any victims. *Id.* § 3553(a).

The listed factors in 18 U.S.C. § 3553(a) include the following:

1) The nature and circumstances of the offense and the history and characteristics of the defendant;

2) The need for the sentence imposed –
    a) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    b) To afford adequate deterrence to criminal conduct;
    c) To protect the public from further crimes of the defendant; and
    d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3) The kinds of sentences available;

4) The kinds of sentence and the sentencing range established for –
   a) The applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
      i) Issued by the Sentencing Commission . . . ; and
      ii) That . . . are in effect on the date the defendant is sentenced

5) Any pertinent policy statement –
   a) Issued by the Sentencing Commission . . . and
   b) That . . . is in effect on the date the defendant is sentenced

6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7) The need to provide restitution to any victims of the offense.

Procedurally, after calculating the applicable Guidelines range, the Court should next consider all the applicable factors set forth in 18 U.S.C. § 3553(a). Indeed, the Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a). *Rita v. United States*, 127 S. Ct. 2456, 2463 (2007).

## III.   GUIDELINES CALCULATION

### A.   Total Offense Level

With respect to Count One, the base offense level for a violation of 18 U.S.C. § 1951 is governed by U.S.S.G. § 2B3.1. As detailed in the Presentence Report (the "PSR") and the plea agreement [ECF No. 188], the aggregate offense level for Count One is 31, pursuant to U.S.S.G. § 3D1.4. The parties agree that the Defendant was "less culpable than most other participants in the [Virani robbery], although his role could not be described as minimal." *See* U.S.S.G. § 3B1.2(b) cmt. 5. As a result, the parties agree that a minor participant adjustment applies to the Defendant, which reduces the offense level by two to 29. After further adjustments for acceptance

6

of responsibility, pursuant to U.S.S.G. § 3E1.1(a) and (b), the final offense level for Count One is 26.

### B. Criminal History Category

The PSR writer calculates the defendant to have one criminal history point, which places him in Criminal History Category I. *See* PSR ¶ 72. The United States agrees with the assessment of the United States Probation Office that the Defendant receives one criminal history point for D.C. Superior Court Case 2017 CMD 3251, in which he pled guilty pursuant to a deferred sentencing agreement. Although the Defendant successfully completed the terms of his deferred sentencing agreement, which resulted in withdrawal of his guilty plea and dismissal of the case, "…a diversionary disposition resulting from a finding or admission of guilt, or a plea of *nolo contendere*, in a judicial proceeding is counted as a sentence under §4A1.1(c) even if a conviction is not formally entered…." U.S.S.G. § 4A1.2(f); *see also U.S. v. Amster*, 193 F.3d 779 (3rd Cir. 1999) (holding that a diversionary disposition resulting from a plea of *nolo contendere* in a judicial proceeding is counted as a sentence under §4A1.1(c), even where plea is later vacated and charges are dismissed). Where, as here, a defendant has previously pled guilty and received the benefit of a deferred sentencing agreement and dismissal of the charges, the disposition is properly counted pursuant to U.S.S.G. § 4A1.2(f). *See* Application Note 9 ("Section A1.2(f) requires counting prior adult diversionary dispositions if they involved a judicial determination of guilt or an admission of guilt in open court. This reflects a policy that defendants who receive the benefit of a rehabilitative sentence and continue to commit crimes should not be treated with further leniency.").

### C. Sentencing Guideline Range

For Count One, a final offense level of 26 and Criminal History Category I results in a

7

guidelines range of 63 to 78 months of incarceration, 1 to 3 years of supervised release, and a fine range of $25,000 to $250,000.  *See* U.S.S.G. §§ 5D1.2(a)(2) and 5E1.2(c)(3).

## IV.   ARGUMENT

The United States respectfully requests that the Court sentence the Defendant to a term of 63 months' incarceration, at the bottom of the applicable guidelines range, to be followed by 24 months of supervised release.  As further detailed below, the guidelines range already reflects the mitigating circumstances present here.  First, in fashioning the plea agreement, the United States considered the Defendant's minor role in one robbery.  Moreover, although the law views the Defendant as responsible for firearms wielded by his co-conspirators during the Virani robbery, the United States agreed to seek dismissal of Count Five at sentencing, thereby removing any mandatory minimum term of imprisonment and substantially reducing the Defendant's overall sentencing exposure.

Given that the plea agreement incorporates the Defendant's mitigating circumstances, the United States respectfully submits that a guideline-compliant sentence at the bottom of the Defendant's applicable range, *i.e.*, 63 months, is sufficient, but not greater than necessary, to serve the interests of justice and appropriately balances the sentencing factors under the 18 U.S.C. § 3553(a).

### 1.   The Nature, Circumstances, and Seriousness of the Offense

Even considering the Defendant's role as the getaway driver, the seriousness of his offense and the resulting harm cannot be overstated.  The Defendant was part of a carefully coordinated plan to ransack and rob a minority-owned establishment using firearms and hammers.  As in the case of any heist, although the Defendant and his accomplices played different roles in the offense, their combined actions terrorized the Virani employees in broad daylight.

More specifically, as one of two getaway drivers, the Defendant was instrumental in getting armed gunmen into the store, serving as a lookout to ensure his accomplices were uninterrupted, driving them from the scene to avoid accountability, and reaping the benefit of having pillaged a store of valuable jewelry. Although the United States certainly recognizes the distinction between the different co-conspirators, the ramifications of the Defendant's conduct—regardless of the specific role he played in this attack—cannot be overlooked.

Setting aside the avarice that motivated the commission of the robbery in the first instance, the Defendant and his co-conspirators showed no regard for the victims who experienced the nightmare of being swarmed by masked strangers pointing firearms at them. What's more, the Defendant's accomplices sprayed the store with shards of glass, turning the victims' place of work and livelihood into a chaotic crime scene. Put simply, the actions of the Defendant and his co-conspirators resulted in significant and lasting harm to many.

To his credit, and as already reflected in the parties' plea agreement, the United States does not consider the Defendant a leader or organizer of either the Virani robbery or the broader spree. Indeed, the evidence suggests that the Defendant only committed one robbery for which he was a minor participant. While the Defendant certainly appreciated that, by driving, he was furthering the commission of the robbery and the escape afterwards, it is significant to the United States that he was the only suspect who did not enter the store during the robbery.

However, notwithstanding the Defendant's limited involvement relative to his accomplices, the criminal conduct that he and his accomplices chose to commit together demonstrates a complete disregard for the consequences of using violence for monetary and/or proprietary gain. As a result, based on the nature and circumstances of the offense, the United States' recommended sentence is warranted.

### 2. The Defendant's History and Characteristics

As reflected in the PSR, the Defendant has minimal criminal history consisting of one adult conviction for an offense also involving theft for financial gain. *See* PSR ¶ 71. The modest nature of his criminal history is reflected in both the guidelines range and the United States' request for a sentence at the bottom of that range. The United States' recommendation further considers the Defendant's compliance while on supervision in the instant matter, although the Government is concerned by the Defendant's admission in the PSR to consuming alcohol and marijuana as recently as August 17, 2024, despite the prohibitions in his release conditions. *See id.* ¶ 93.

### 3. The Need to Promote Respect for the Law and Deterrence

As called for by the statute, the sentence should reflect the seriousness of the offense, promote respect for the law, afford adequate deterrence, and provide just punishment for the offense. *See* 18 U.S.C. § 3553(a)(2). Perhaps more than any other factor, the need to deter the coordinated and brazen conduct in this case weighs most heavily in favor of the recommended sentence.

In an age of temptation to resort to violence for one's own benefit, it is important for the Defendant and others in the community to appreciate that, in the end, such crime does not pay. Despite maintaining a steady stream of employment before and around the time of the robbery, the Defendant still committed the instant offense, likely due to greed. Without remorse, he and his co-conspirators displayed on social media their celebration in Miami, exhibiting their elaborate shopping spree, dining and clubbing experiences, and vacation in a penthouse—all fueled by funds that were not theirs to spend.

The Defendant, his co-conspirators, and anyone who admired this extravagance should understand that their actions have consequences, and the severity of those consequences render

10

such schemes unworthwhile. As a result, the United States respectfully submits that, under these facts, a significant term of imprisonment is both appropriate and necessary.

A prison sentence of 63 months is the best measure of deterrence available to the Court. Such a sentence accomplishes the aims of § 3553(a)(2) in both a general and particularized manner. As applied to the Defendant, such a sentence reflects both the seriousness and dangerousness of the Defendant's conduct in this case, even when acting as the driver. With respect to general deterrence, this recommended sentence promotes respect for the law and the safety of the community by serving as a deterrent to brazen and violent conduct such as that perpetrated by the Defendant and his co-conspirators in this case.

### 4. Other Factors

The United States' recommended sentence is also justified to protect the public while allowing the Defendant the opportunity to pursue further educational and vocational training, as well as to participate in other programs that will hopefully ensure a more productive future.

## V. CONCLUSION

For the foregoing reasons, the United States recommends that the Court sentence the Defendant to 63 months of imprisonment, followed by a term of 24 months of supervised release. Such a sentence serves the interest of justice and appropriately balances the sentencing factors articulated under 18 U.S.C. § 3553(a).

                Respectfully submitted,

                MATTHEW M. GRAVES
                UNITED STATES ATTORNEY
                D.C. Bar No. 481052

By:   */s/ Sitara Witanachchi*
       SITARA WITANACHCHI
       D.C. Bar No. 1023007
       ANDREA DUVALL
       AR Bar No. 2013114

Assistant United States Attorneys  
U.S. Attorney's Office  
Violence Reduction & Trafficking Offenses  
601 D Street, NW  
Washington, D.C. 20530

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2024, a copy of the United States' Sentencing Memorandum was submitted via CM/ECF, which will transmit to counsel to the Defendant, Mr. Daniel Dorsey, Esq.

<u>/s/ Sitara Witanachchi</u>  
Assistant U.S. Attorney