UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 1:23-cr-137-5 (CRC) |
| : | |
| DAVON JOHNSON, : | |
| : | |
| Defendant. : | |

**UNITED STATES' MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Memorandum in Aid of Sentencing as to Defendant Davon Johnson (hereafter, the "Defendant").[1] For the reasons set forth below, the United States respectfully requests that the Court impose a sentence of 111 months of incarceration, to be followed by 48 months of supervised release.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

On June 10, 2022, the Defendant committed an armed robbery as part of a broader conspiracy to rob South Asian jewelry stores, across multiple states, of heavy gold jewelry. Among the largest robberies committed during the spree, the June 10, 2022 robbery of Virani Jewelers (hereafter, "Virani") in Iselin, New Jersey was spearheaded by leaders of the conspiracy; involved at least two getaway vehicles and nine suspects, including the Defendant; and resulted in an estimated loss of $1.2 million in gold jewelry. With each co-conspirator playing a different role in committing the Virani robbery, their combined actions wreaked havoc upon the store and its employees.

On the morning of the robbery, around 10:00 a.m., the Defendant and his co-conspirators traveled to the Home Depot at 901 Rhode Island Avenue NE in Washington, D.C. (hereafter,

---

[1] Sentencing is scheduled for November 6, 2024.

"D.C."). There, the Defendant and co-defendant Avery Fuller purchased a hammer ultimately used to smash glass display cases within the store, as reflected in the screenshot taken from store surveillance video depicted in Figure A below.



*Figure A: June 10, 2022 Home Depot surveillance video showing Defendant (l) and Fuller (r)*

From D.C., they traveled in coordination with the other getaway vehicle to Philadelphia, Pennsylvania, where the Defendant and his co-conspirators convened on the rooftop of an apartment building as co-defendant Trevor Wright explained the plan. From there, the Defendant and his co-conspirators traveled to the vicinity of Virani, casing the jewelry store for close to one hour. At the opportune moment, around 7:45 p.m., the Defendant and his co-conspirators bolted together into Virani, where they staged an armed takeover.

They collectively stormed the store in a show of force, wearing masks and gloves to conceal their identities. Upon entering together, with Wright leading the charge, the co-conspirators shoved employees to the ground and pointed firearms at their heads as others broke the glass display cases, resulting in significant damage throughout the store. Interior camera shows one of the gunmen pointing his firearm at an employee's head while pushing her to the back of the store where the vaults are located, as depicted in Figure B below.



*Figure B: June 10, 2022 surveillance of Virani armed robbery*

As his co-conspirators smashed glass display cases, the Defendant shoveled Virani's gold into a bag, callously stepping over an employee who lay face-down on the floor, as seen in Figure C below.



*Figure C: June 10, 2022 surveillance of Virani armed robbery*

Two of the employees in the store sustained minor injuries—one victim was bleeding and had a small laceration to her right forearm and small cuts to her right knee, toe, and left thigh from being shoved to the ground; the other victim was bleeding from her right leg with a small laceration to her right knee. After ransacking the store, the Defendant and his accomplices ran into the two getaway vehicles, successfully fleeing with their haul of stolen gold back to D.C.

After the robbery, the Defendant sent, via text message, various flight options to Fuller, presumably to secure his own travel arrangements from D.C. to Miami, Florida, where Wright and Fuller had: (1) a high-rise condominium; and (2) a fence willing to convert stolen gold jewelry into cash. Fuller purchased the Defendant a plane ticket to Miami, scheduled to depart on June 13, 2022. There, the Defendant met some of his co-conspirators, including Wright, Fuller, and Franklin Hunter. Ultimately, while in Miami, some of the stolen gold was converted into cash, and the post-robbery celebrations ensued. During this trip, Franklin Hunter posted on his Instagram account a video depicting the Defendant with Hunter, DeCarlos Hill, and other co-conspirators on a lavish shopping spree at a luxury retail store, as depicted in Figure D below.



*Figure D: Instagram story depicting Defendant shopping*

On June 19, 2022, only nine days after the robbery, the Defendant posted a story on his Instagram account, featuring himself with stacks of cash, as depicted in Figure E below.



*Figure E: Instagram story posted to Defendant's social media on June 19, 2022*

On or about April 25, 2023, a federal grand jury indicted two of the co-conspirators, Wright and William Hunter, on one count of Conspiracy to Interfere with Interstate Commerce by Robbery, in violation of 18 U.S.C. § 1951, in relation to an armed robbery of a different store, Paradise Jewelry Store [ECF No. 1]. On August 17, 2023, a federal grand jury returned a 19-count Superseding Indictment, charging the Defendant and his co-conspirators in connection with nine armed robberies in New Jersey, Pennsylvania, Florida, and Virginia, with substantial planning and coordination occurring in D.C. [ECF No. 10]. The Defendant specifically was only charged in connection with the Virani robbery in New Jersey.

On August 30, 2023, the Defendant was arrested in his D.C. residence, where law enforcement found two firearms, twenty live rounds of ammunition, apparent marijuana packaged

5

for distribution, and 4.8 grams of a rock-like substance in packaging consistent with distribution. These recoveries subjected the Defendant to additional charges reflected in the March 12, 2024 Second Superseding Indictment [ECF No. 134].

On August 15, 2024, pursuant to a plea agreement [ECF No. 195], the Defendant plead guilty to a two-count Superseding Information, charging Conspiracy to Interfere with Interstate Commerce by Robbery, in violation of 18 U.S.C. § 1951 (Count 1), and Possessing a Firearm in Furtherance of a Crime of Violence and Aiding and Abetting, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 2). In so doing, the Defendant accepted responsibility for his involvement in the Virani armed robbery. As part of the plea agreement, the Government agreed to seek dismissal of the greater and remaining charges against the Defendant.

## II.    LEGAL STANDARD

Pursuant to 18 U.S.C. § 3553(a), the Court shall impose a sentence that is sufficient, but not greater than necessary, to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" "to protect the public from further crimes of the defendant;" and to "provide the defendant with needed educational or vocational training." 18 U.S.C. § 3553(a)(2). In addition, the Court must also consider "the nature and circumstances of the offense and the history and characteristics of the defendant;" the types of sentences available, the Sentencing Guidelines; any pertinent policy statements; the need to avoid unwarranted sentence disparities; and the need to provide restitution to any victims. *Id.* § 3553(a).

The listed factors in 18 U.S.C. § 3553(a) include the following:

1) The nature and circumstances of the offense and the history and characteristics of the defendant;

2) The need for the sentence imposed –
   a) To reflect the seriousness of the offense, to promote respect for

       the law, and to provide just punishment for the offense;
  b) To afford adequate deterrence to criminal conduct;
  c) To protect the public from further crimes of the defendant; and
  d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3) The kinds of sentences available;

4) The kinds of sentence and the sentencing range established for –
  a) The applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
    i) Issued by the Sentencing Commission . . . ; and
    ii) That . . . are in effect on the date the defendant is sentenced

5) Any pertinent policy statement –
  a) Issued by the Sentencing Commission . . . and
  b) That . . . is in effect on the date the defendant is sentenced

6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7) The need to provide restitution to any victims of the offense.

Procedurally, after calculating the applicable Guidelines range, the Court should next consider all the applicable factors set forth in 18 U.S.C. § 3553(a). Indeed, the Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a). *Rita v. United States*, 127 S. Ct. 2456, 2463 (2007).

## III.  GUIDELINES CALCULATION

### A.  Total Offense Level

With respect to Count One, the base offense level for a violation of 18 U.S.C. § 1951 is governed by U.S.S.G. § 2B3.1. As detailed in the Presentence Report (the "PSR") and the plea agreement [ECF No. 195], the aggregate offense level for Count One is 25, pursuant to U.S.S.G. § 3D1.4. After further adjustments for acceptance of responsibility, pursuant to U.S.S.G. §

3E1.1(a) and (b), the final offense level for Count One is 22. As to Count Two, the applicable guideline sentence for a violation of 18 U.S.C. § 924(c)(1)(A)(i) is governed by U.S.S.G. § 2K2.4(b).

### B. Criminal History Category

The PSR writer calculates the defendant to have five criminal history points, which places him in Criminal History Category III. *See* PSR ¶ 81.

### C. Sentencing Guideline Range

For Count One, a final offense level of 22 and Criminal History Category III results in a guidelines range of 51 to 63 months of incarceration, 1 to 3 years of supervised release, and a fine range of $15,000 to $150,000. *See* U.S.S.G. §§ 5D1.2(a)(2) and 5E1.2(c)(3). Pursuant to U.S.S.G. § 2K2.4(b), the guidelines range for Count Two is the minimum term of imprisonment set by statute, here, sixty months of incarceration, which shall be imposed consecutively to the sentence imposed on Count One, and 2 to 5 years of supervised release. As a result, the Defendant's aggregate sentencing range for Counts One and Two is 111 to 123 months' incarceration.

### IV. ARGUMENT

The United States respectfully submits that a guidelines-compliant sentence at the bottom of the Defendant's applicable range, *i.e.*, 111 months, is sufficient, but not greater than necessary, to serve the interests of justice and appropriately balances the sentencing factors under the 18 U.S.C. § 3553(a).

#### 1. The Nature, Circumstances, and Seriousness of the Offense

The seriousness of the Defendant's offense and the resulting harm cannot be overstated. He was part of a carefully coordinated plan to ransack a minority-owned establishment using firearms and hammers. As in the case of any heist, although the Defendant and his accomplices

played different roles in the offense, their combined actions resulted in substantial financial loss for Virani and substantial harm to its employees.

In robbing Virani to satiate their greed, the Defendant and his co-conspirators showed no regard for the victims, who were swarmed by masked men brandishing firearms. The victims suffered the indignities of being manhandled, shoved to the ground, and forced to a safe at gunpoint. Moreover, the Defendant and his co-conspirators ravaged the store, spraying it with shards of glass, destroying the interior surveillance cameras, and turning a place of livelihood into a frenetic crime scene. The image depicted in Figure F below demonstrates the devastating aftermath, as well as the vulnerability of the victims.



*Figure F: June 10, 2022 surveillance of Virani armed robbery*

Put simply, the actions of the Defendant and his co-conspirators resulted in significant and lasting harm to many.

To his credit, the United States does not consider the Defendant a leader or organizer of either the Virani robbery or the broader spree. Indeed, the evidence suggests that the Defendant only committed this one robbery within the larger spree. Even so, the criminal conduct that he and his accomplices chose to commit together demonstrates a complete disregard for the consequences of using violence for monetary and/or proprietary gain. That disregard is underscored by the

9

Defendant's travel to Miami following the robbery and his brazen social media displays. As a result, based on the nature and circumstances of the offense, the United States' recommended sentence is warranted.

    **2.    The Defendant's History and Characteristics**

The Defendant's criminal history is noteworthy. In addition to the offenses enumerated in pages 15 through 17 of his PSR, the Defendant was previously convicted of Assault with Intent to Commit Robbery, Possession of a Prohibited Weapon (misdemeanor), and Obstruction of Justice in case number 2012-CF3-013897. *See* PSR ¶ 76. Concerningly, less than two months after his April 2021 release from incarceration, following revocation of supervised release in that matter, the Defendant committed the Virani robbery. And at the time of his August 30, 2023 arrest in the instant matter, the Defendant possessed two firearms (depicted in Figure G below), ammunition, and distribution-quantities of marijuana and cocaine base, despite his supervision at the time in at least two separate cases, 2020-CF2-002938 and 20220-CTF-005884.



*Figure G: firearms recovered from Defendant's residence on August 30, 2024*

What's more, while detained for the instant case, the Defendant incurred a disciplinary infraction on December 4, 2023, involving threats to kill a correctional officer upon his release. *See* PSR ¶ 21. Given that the Defendant's conduct while detained suggests that he has yet to be

deterred from engaging in criminal conduct, a guidelines compliant sentence is warranted. The United States, however, recognizes that such a term of incarceration would be the lengthiest he has yet served, and the existence of certain mitigating factors set forth in the PSR, including the destabilizing loss of his mother at a young age. As a result, the United States submits that a sentence at the bottom of the guidelines range is both warranted and appropriate.

### 3. The Need to Promote Respect for the Law and Deterrence

As called for by the statute, the sentence should reflect the seriousness of the offense, promote respect for the law, afford adequate deterrence, and provide just punishment for the offense. *See* 18 U.S.C. § 3553(a)(2). Perhaps more than any other factor, the need to deter the coordinated and violent conduct in this case weighs most heavily in favor of the recommended sentence.

In an age of temptation to resort to violence for one's own benefit, it is important for the Defendant and others in the community to appreciate that, ultimately, such crime does not pay. Without remorse, he and his co-conspirators displayed on social media their celebration in Miami, fueled by funds that were not theirs to spend. The Defendant, his co-conspirators, and anyone who admired this extravagance should understand that their actions have consequences, and the severity of those consequences render such schemes unworthwhile.

Moreover, as detailed *supra*, the Defendant has remained undeterred by his prior contacts with the criminal justice system. Indeed, his engagement in a criminal conspiracy to violently rob an establishment represents an escalation in criminal conduct. Thus, the United States respectfully submits that, under these facts, a significant term of imprisonment is both appropriate and necessary.

A prison sentence of 111 months is the best measure of deterrence available to the Court. Such a sentence accomplishes the aims of § 3553(a)(2) in both a general and particularized manner. As applied to the Defendant, such a sentence reflects both the seriousness and dangerousness of the Defendant's conduct in this case. With respect to general deterrence, this recommended sentence promotes respect for the law and the safety of the community by serving as a deterrent to brazen and violent conduct such as that perpetrated by the Defendant and his co-conspirators in this case.

### 4. Other Factors

The United States' recommended sentence is also justified to protect the public while allowing the Defendant the opportunity to pursue further educational and vocational training, as well as to participate in other programs that will hopefully ensure a more productive future.

## V. CONCLUSION

For the foregoing reasons, the United States recommends that the Court sentence the Defendant to 111 months of imprisonment, followed by a term of 48 months of supervised release. Such a sentence serves the interest of justice and appropriately balances the sentencing factors articulated under 18 U.S.C. § 3553(a).

        Respectfully submitted,

        MATTHEW M. GRAVES
        UNITED STATES ATTORNEY
        D.C. Bar No. 481052

By:    */s/ Sitara Witanachchi*
        SITARA WITANACHCHI
        D.C. Bar No. 1023007
        ANDREA DUVALL
        AR Bar No. 2013114
        Assistant United States Attorneys
        U.S. Attorney's Office
        Violence Reduction & Trafficking Offenses
        601 D Street, NW

Washington, D.C. 20530

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2024, a copy of the United States' Sentencing Memorandum was submitted via CM/ECF, which will transmit to counsel to the Defendant, Mr. Kevin Wilson, Esq.

/s/ Sitara Witanachchi
Assistant U.S. Attorney